IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

      v.

RUBEN ANTONIO GAONA-CORNEJO,

        Defendant.

Case No. 21-cr-00199-CRB-1

**ORDER DENYING MOTION TO DISMISS**

     In January of this year, Defendant Ruben Gaona-Cornejo ("Gaona") withdrew his guilty plea to 8 U.S.C. § 1326, being a deported alien found in the United States, so that he could challenge his underlying removal order via 18 U.S.C. § 1326(d). <u>See</u> Motion to Withdraw Guilty Plea (dkt. 92); Motion Hearing (dkt. 97). Gaona has now filed a Motion to Dismiss Due to Invalid Deportation. <u>See</u> Mot. (dkt. 108). For the reasons below, the Court denies the motion.

**I.**     **BACKGROUND**

    **A.**     **2013 Felony**

     Gaona moved to the United States as a young child and lived here for years as a legal permanent resident. Mot. at 5. In October 2013, he was involved in an incident in which he strangled and threw his girlfriend into a mirror and a wall in front of their 6-year old daughter. Sargent Decl. Ex 8 (dkt. 105-9) at 3, 6–7. His 6-year old intervened in the altercation and called the police. <u>Id.</u> at 6.

     On November 21, 2013, represented by Walt Moreno, Gaona entered no contest pleas to one count of California Penal Code § 273.5(a) (felony infliction of corporal injury

United States District Court

Northern District of California

United States District Court
Northern District of California

1  on spouse or cohabitant), and one count of violating California Health and Safety Code §

2  11351 (possession for sale of narcotics, to wit cocaine) as a felony.  Opp'n at 1–2.

3  Gaona's file reflects that he was advised at the time of the possible immigration

4  consequences of his plea.  Sargent Decl. Ex. 1 (dkt. 105-2) at 4 (showing Gaona's initials

5  next to "After discussing with my attorney, I understand that if I am not a citizen of the

6  United States, my conviction for the offense charged may have the consequence of

7  deportation, exclusion from admission to the United States, or denial of naturalization

8  pursuant to the laws of the United States.").  Moreno also signed underneath the statement:

9  "I have explained each of the above rights to the defendant and have discussed the facts,

10  consequences, including immigration, and possible defenses to the charge(s) with

11  him/her."  Id.  The transcript of the change of plea reflects that the court held a colloquy

12  about that document.  Sargent Decl. Ex. 2 (dkt. 105-3) at 2:10–19, 4:7–26.

13      **B.      Immigration Consequences of 2013 Conviction**

14      Gaona became subject to removal after that conviction because California Penal

15  Code § 273.5(a) is a crime of violence.  See Opp'n at 2 (citing Banuelos-Ayon v. Holder,

16  611 F.3d 1080, 1083 (9th Cir. 2010)).  The Department of Homeland Security issued a

17  Notice to Appear to Gaona on January 6, 2015.  Sargent Decl. Ex. 4 (dkt. 105-5).  It

18  attached a list of organizations and attorneys that provide free legal services.  Id. at 3.

19  Gaona demanded a prompt hearing.  Id.

20      Gaona had immigration hearings in January and February 2015.  Sargent Decl. Ex.

21  5 (dkt. 105-6).  The IJ advised Gaona that he was not eligible for bond or cancellation of

22  removal because he had an aggravated felony.  Id. at Day 1 1:18; Day 3 2:49.  He

23  explained what cancellation of removal was.  Id. at Day 1 1:35.  He explained what an

24  aggravated felony was.  Id. at Day 1 2:43.  He stated that "there may be other provisions in

25  the law that contain things that you can apply for, that you may be eligible for," but told

26  him, "that's why you need to talk to your attorney or an attorney and get a picture of what

27  your options realistically are."  Id. at Day 1 1:55.  Gaona had counsel at the first

28  appearance but not later appearances.  The IJ advised Gaona to take time to get the advice

2

United States District Court
Northern District of California

of an attorney before making any decisions. Id. at Day 1 3:30 & 6:00. The IJ continued the case after the second day of hearings in order to give Gaona more time to consult with an attorney, telling him, "it's going to be a lot better for you if you have an attorney to help explain what the options are." Id. at Day 2 1:13. At the beginning of the final hearing, the IJ asked if Gaona had found an attorney, and when Gaona said that he had not, the IJ offered to continue the case for two more weeks. Id. at Day 3 00:46. Gaona told the IJ that the pro bono lawyers had advised him that he had "a 95% chance of losing." Id. at Day 3 1:37. The IJ advised Gaona that because of his drug conviction, he was ineligible for discretionary relief, and that he might be eligible for the "Torture Convention" although it would be difficult to get relief under it. Id. at Day 3 3:31–52. The IJ told Gaona that if he was removed, given his criminal history, he would never be able to come back to the United States and that returning would be a crime. Id. at Day 3 4:18 & 7:48. The IJ told Gaona that he would have to decide if he was going to "fight the case," and told him that he would allow him to consult with his family and think about it. Id. at Day 3 4:35. The IJ told Gaona that if he elected not to "fight the case," he would order Gaona's removal. Id. at Day 3 4:57. Gaona stated that he did not want time to consult with his family and that he would "get the deportation" instead of applying for relief. Id. at Day 3 5:21. The government suggested that the IJ give Gaona more time to access a phone and speak to attorneys, and the IJ offered to give Gaona a few days to use the telephone before he made a decision, saying he could be "extremely flexible about the time." Id. at Day 3 5:50. Gaona declined and said that he was ready to sign his deportation papers. Id. at Day 3 6:48. The IJ informed Gaona that he could appeal the IJ's decision to "a higher court." Id. at Day 3 7:33. Gaona waived an appeal. Id. at Day 3 10:40 & Sargent Decl. Ex. 6 (dkt. 105-7).

Gaona was first removed from the United States on February 11, 2015. Opp'n at 4.

## C.    Events Upon Reentry in 2015

Gaona unlawfully reentered the United States on August 16, 2015. Sargent Decl. Ex. 7 (dkt. 105-8). He was served with a Notice of Intent/Decision to Reinstate Prior

Order that day.  Id.  In April 2016, he moved to dismiss under 8 U.S.C. § 1326(d), arguing

in part that:

> Mr. Gaona received ineffective assistance of counsel. The
> Ninth Circuit has made clear it is ineffective assistance of
> counsel to fail to inform a criminal defendant alien that there is
> a "virtual certainty" of removal from a criminal conviction. See
> United States v. Rodriguez-Vega, (797 F.3d 781) (9th Cir.
> 2015). In county court, no one told Mr. Gaona he was pleading
> to two aggravated felonies. In immigration court, none of the
> lawyers advised Mr. Gaona his prior convictions could be
> challenged because he had received ineffective assistance of
> counsel

United States v. Ruben Gaona-Cornejo, 15-cr-02322-BEN (S.D. Cal) at Dkt. 24 at 1–2.  A

court did not adjudicate that motion because Gaona pled guilty instead.  Id. Dkt. 44 (Plea

Agreement).  He was convicted of violating 8 U.S.C § 1326 in December 2016.  United

States v. Ruben Gaona-Cornejo, 15-cr-02322-BEN (S.D. Cal).  Gaona was sentenced to 18

months in prison.  Id. Dkt. 53–54.

   In 2017, Gaona made two separate efforts to undo the consequences of his removal.

   First, Gaona applied for Withholding of Removal under the Convention Against

Torture, which was denied in May 2017.  Opp'n at 4–5; Sargent Decl. Ex. 8 (dkt. 105-9).

The BIA affirmed in September 2017.  Id.

   Second, Gaona in February 2017 filed a petition for writ of habeas corpus in

Sonoma County Superior Court, arguing that Moreno was ineffective.  Opp'n at 5; Sargent

Decl. Ex. 9 (dkt. 105-10).  Gaona (represented by Erick Guzman, as he is here) asserted

that "[h]ad prior counsel researched the issue, he would have seen that the controlling

immigration statute clearly mandated deportation for any non-citizen who, at any time

after entry, was convicted of an 'aggravated felony.' . . . Mr. Cornejo was not advised from

his attorney of the immigration consequences of his plea."  Sargent Decl. Ex. 9 at 11.

Gaona included a declaration from Moreno stating that he did not research the immigration

consequences of the plea offer and did not discuss with Gaona that Penal Code § 237.5

was an aggravated felony.  Id. Ex. A.  Moreno also states that he did not discuss with

Gaona the immigration consequences of Health and Safety Code § 11341.  Id.  And he

4

states that he did not "inform [Gaona] that as a result of his guilty plea, he would be ineligible to apply for any form of relief, including 'cancellation of removal.'" Id.  Gaona also included in his habeas petition his own declaration, stating:

> Mr. Moreno never informed me of what the immigration consequences would flow from my plea.  He never informed me that as a result of my plea that deportation would be a virtual certainty, or anything similar to that.  He never informed me that I would be ineligible to apply for any form of discretionary relief, including cancellation of removal.
>
> Had I been informed of the immigration consequences of the plea I entered, I would not have entered the plea that I did.  I either would have insisted on going to trial, or I would have held out for a disposition that would have allowed me to avoid deportation, or, at a minimum, allowed me to apply for relief from deportation.

Id. Ex. B.  That petition was denied on April 7, 2017.  Sargent Decl. Ex. 10 (dkt. 105-11). The court held that "Assuming arguendo that [Gaona] were somehow in California 'custody' for habeas purposes, [Gaona] fails to demonstrate prejudice from trial counsel's alleged deficient performance."  Id. at 2 (emphasis added) (noting that "a self-serving statement—after trial, conviction, and sentence—that with competent advice he or she would have accepted or rejected a proffered plea bargain[] is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice").  It continued:

> Petitioner's self-serving declaration that he would have rejected the plea agreement had he been adequately advised of the actual immigration consequences of the plea is not corroborated independently by objective evidence.  Similarly, petitioner's claim that he would have been able to secure a more immigration friendly plea agreement is not corroborated by any evidence.  There's no evidence that the People would've agreed to any alternative plea disposition.

Id.  Gaona filed a petition for writ of mandate with the California Court of Appeal, which denied the writ for failing to provide a sufficient record.  Sargent Decl. Ex. 11 (dkt. 105-12.  Gaona refiled, and on September 29, 2017, the Court of Appeal  denied the petition, holding "Even disregarding the procedural problems that persist in this substantially identical refiled petition, and also assuming, arguendo, that petitioner has . . . demonstrated his custodial status for purposes of habeas relief, petitioner still has not

1  demonstrated an entitlement to relief on his ineffective assistance of counsel claim." Id.

2  Gaona was removed from the United States for a second time on October 5, 2017.

3  Opp'n at 6.

4  **D.    Second Reentry and Arrest**

5  At some point, Gaona reentered the United States again. Id. On the night of

6  January 22, 2021 to January 23, 2021, he was arrested by the Santa Rosa Police

7  Department, again in connection with a domestic dispute. Id. That arrest led to one count

8  of violating 18 U.S.C. 1326(a) and (b)(2). Compl. (dkt. 1). A change of plea hearing was

9  initially set for August 4, 2021, but was postponed several times at Gaona's request. See,

10 e.g., Clerk's Notice (dkt. 23); Status Conference (dkt. 26); Clerk's Notice (dkt. 27);

11 Clerk's Notice (dkt. 32); Clerk's Notice (dkt. 43). On September 13, 2022, Gaona pled

12 guilty to 8 U.S.C. § 1326 before this Court. See Change of Plea Hearing (dkt. 70);

13 Application and Order Accepting Plea (dkt. 71).

14 **E.    Motion Under Cal. Penal Code Section 1473.7**

15 On July 6, 2023, in superior court, Gaona filed a motion under California Penal

16 Code § 1473.7, which provides habeas relief for individuals no longer in custody when,

17 among other circumstances, "[t]he conviction or sentence is legally invalid due to

18 prejudicial error damaging the moving party's ability to meaningfully understand, defend

19 against, or knowingly accept the actual or potential adverse immigration consequences of a

20 conviction or sentence." See Mot. Ex. A (dkt. 108-1); Cal. Penal C. § 1473.7.[1] The

21 motion was nearly identical to Gaona's petition in February 2017. Compare id. with

22 Sargent Decl. Ex. 9; see also Memo. re Cal. Penal Code § 1473.7 (dkt. 109) at 3 (telling

23 this Court: "In 2017, undersigned counsel filed . . . a traditional habeas corpus petition. . . .

24 That petition contained essentially the same arguments as the 2023 Penal Code 1473.7

25 motion to vacate."). The July 2023 motion did not mention the February 2017 petition.

26 The superior court did not rule on the July 2023 motion. Opp'n at 7. Instead, the

27

28 [1] See also id. ("A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel.").

Sonoma County deputy district attorney and Gaona "navigated around the 1473.7 issue" with an agreed-upon disposition. See Sargent Decl. Ex. 13 (dkt. 105-14). The Sonoma County District Attorney's Office allowed Gaona to withdraw his 2013 pleas to California Penal Code section 273.5(a) and California Health and Safety Code § 11351, and to plead instead to having violated statutes that do not necessarily cause deportation. Opp'n at 7 (citing Sargent Decl. Ex. 12 (dkt. 105-13) at 2:4–22) ("We negotiated a resolution to the motions, essentially a nunc pro tunc."). The concept of "ineffective assistance" did not come up at the hearing. See Sargent Decl. Ex. 12.

### F.     Pending Motion

Having withdrawn his plea to 8 U.S.C. § 1326, see Motion to Withdraw Guilty Plea; Motion Hearing, Gaona now moves to dismiss the indictment, see Mot. The government opposed the motion, see Opp'n (dkt. 105), and Gaona replied, see Reply (dkt. 112). The Court held a motion hearing on April 12. See Motion Hearing (dkt. 113). Following the motion hearing, Gaona sought leave to file a supplemental memorandum, which the Court allowed. See Mot. for Ex Parte App. (dkt. 114); Order Granting Ex Parte App. (dkt. 115). Gaona sought and received additional time to file that supplemental memorandum. See Second App. (dkt. 116); Order Granting Second App. (dkt. 117). He filed the supplemental memorandum, and the government responded. See Supp. Memo. (dkt. 120); Reply to Supp. Memo. (dkt. 122). The Court denied Gaona's request to file a further supplemental response. See Order Denying Request (dkt. 124); Request (dkt. 123).

## II.     LEGAL STANDARD

A defendant may move to dismiss an indictment for "failure to state an offense." Fed. R. Crim. Proc. 12(b)(3)(B)(v). "For a defendant to be convicted of illegal reentry under 8 U.S.C. § 1326, the Government must establish that the defendant left the United States under order of exclusion, deportation, or removal, and then illegally reentered." United States v. Raya-Vaca, 771 F.3d 1195, 1201 (9th Cir. 2014) (internal quotation marks omitted). "A defendant charged under § 1326 has a due process right 'to collaterally attack his removal order because the removal order serves as a predicate element of his

1    conviction.'"  Id. (quoting United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1047 (9th
2    Cir. 2004)).

3            To successfully challenge an indictment under section 1326, "a defendant must
4    demonstrate that (1) he exhausted the administrative remedies available for seeking relief
5    from the predicate removal order; (2) the deportation proceedings 'improperly deprived
6    [him] of the opportunity for judicial review'; and (3) the removal order was
7    'fundamentally unfair.'"  Id. (quoting 8 U.S.C. § 1326(d)).

8            To succeed on a claim of ineffective assistance of counsel, a defendant must show
9    that (1) his counsel performed deficiently, and (2) that deficient performance prejudiced
10   the defense.  See Strickland v. Washington, 466 U.S. 668, 687–88 (1984).

11   **III.    DISCUSSION**

12           Gaona argues that "[t]he underlying deportation in this case is invalid, because it
13   rested solely on Mr. Gaona's 2013 Sonoma County (since vacated) guilty pleas."  Mot. at
14   8.  He asserts that he meets all of the requirements of section 1326(d) because (1) he
15   exhausted his administrative remedies; (2) the deportation proceedings improperly
16   deprived him of the opportunity for judicial review; and (3) the removal order was
17   fundamentally unfair.  See id. at 9–11 (citing 8 U.S.C. § 1326(d)).

18           **A.      Exhaustion and Judicial Review**

19           This order addresses the first and second prongs of the section 1326(d) analysis
20   together, because the two are closely related.  See United States v. Gonzalez-Villalobos,
21   724 F.3d 1125, 1130 (9th Cir. 2013) ("Although 8 U.S.C. § 1326(d)(1) and (d)(2) are
22   separate requirements, we have generally held that where an alien is deprived of his right
23   to appeal to the BIA, he satisfies both (d)(1) and (d)(2).").  "[A]n alien cannot collaterally
24   attack an underlying deportation order if he validly waived the right to appeal that order,"
25   and the waiver was "both considered and intelligent."  United States v. Arrieta, 224 F.3d
26   1076, 1079 (9th Cir. 2000).

27                   **1.      Parties' Arguments**
28           Gaona waived an appeal of his removal order, Sargent Decl. Ex. 5 at Day 3 10:40 &

United States District Court
Northern District of California

Sargent Decl. Ex. 6 (dkt. 105-7), but he argues that his waiver was invalid because it was not considered and intelligent, Mot. at 9 (citing United States v. Gomez, 757 F.3d 885, 893 (9th Cir. 2014)).  He contends that he was not really advised of "the consequences of his waiver of appeal" because he "was never advised of the invalidity of the underlying Sonoma County convictions, nor was he ever advised that he could move to vacate his guilty pleas base[d] on that invalidity."  Id. at 10.  The government has the burden to prove a valid waiver by clear and convincing evidence.  See Gomez, 757 F.3d at 893–94.  Gaona also argues that he was improperly denied judicial review because his waiver of the right to judicial review was "not considered or intelligent."  Mot. at 10 (quoting United States v. Mendoza-Lopez, 481 U.S. 828, 840 (1987)).  He contends that because he was "mis-advised by his prior attorney, and never received subsequent effective representation by a second attorney (nor ameliorative advi[c]e from the IJ)," his waiver was invalid.  Id.

The government focuses primarily on the third prong of the section 1326(d) analysis, but it briefly argues that Gaona "also has not satisfied the first two prongs." Opp'n at 10 n.4.  It asserts that Gaona's waiver of his appeal of the IJ's ruling was "considered and intelligent" because "the IJ counseled him across three separate, individualized hearings about his options, and encouraged him to seek counsel repeatedly before taking his admission and waiver of appeal."  Id. (citing Sargent Decl. Ex. 5).  The government adds that Gaona has not asserted that he was eligible for immigration relief at the time of his immigration hearings, nor has he cited to any cases supporting the notion that his alleged ineffective assistance in 2013 "infected [his] immigration proceeding."  Id.

### 2.    Analysis of the First Two Prongs

The Ninth Circuit has explained that "[t]he cases in which we have determined that § 1326(d)(1) and (d)(2) were satisfied can be divided into three overlapping categories." Gonzalez-Villalobos, 724 F.3d at 1130.  These are: (1) where an "IJ failed to inform the alien that he had a right to appeal his deportation order to the BIA," (2) where an IJ failed "to inform the alien that he is eligible for a certain type of relief," and (3) where an alien waived his right to appeal, but the waiver "was not 'considered and intelligent,'" as when

an IJ fails to inform an alien of his right to appeal or tells him he was ineligible for relief. Id. (collecting cases).  See also United States v. Lopez-Chavez, 757 F.3d 1033, 1044 (9th Cir. 2014) (ineffective assistance of counsel in immigration proceedings that prejudiced defendant necessarily met all three prongs); United States v. Castellanos-Avalos, 22 F.4th 1142, 1146 (9th Cir. 2022) (reiterating that "'defendants must meet all three' requirements of § 1326(d), meaning that a failure to satisfy any of the three prongs dooms a collateral attack on a removal order.") (quoting United States v. Palomar-Santiago, 141 S. Ct. 1615, 1620–21 (2021)); see also United States v. Portillo-Gonzalez, 80 F.4th 910, 913 (9th Cir. 2023) (holding that, per Palomar-Santiago, IJ errors do not automatically establish section 1326(d) requirements).

   This case does not appear fall into any of those three categories.  This Court listened to the hearings before the IJ and observes that the IJ was very patient and thorough.  He told Gaona that he could appeal the IJ's decision to "a higher court."  Sargent Decl. Ex. 5 at Day 3 7:33.  He told Gaona that he was not eligible for bond or cancellation of removal because he had an aggravated felony, id. at Day 1 1:18; Day 3 2:49, and further advised Gaona that because of his drug conviction, he was ineligible for discretionary relief, and that he might be eligible for the "Torture Convention" although it would be difficult to get relief under it, id. at Day 3 3:31–52.  The IJ told Gaona that he would have to decide if he was going to "fight the case," and told him that he would allow him to consult with his family and think about it.  Id. at Day 3 4:35.  The IJ told Gaona that if he elected not to "fight the case," he would order Gaona's removal.  Id. at Day 3 4:57.  Gaona stated that he did not want time to consult with his family and that he would "get the deportation" instead of applying for relief.  Id. at Day 3 5:21.

   Gaona has not identified any particular form of immigration relief that he was eligible for at the time of his hearing before the IJ.  See Opp'n at 10 n.4; see also Gomez, 757 F.3d at 898 (no prejudice despite violation of rights because defendant was not eligible for relief).  What Gaona argues instead is that someone should have advised him "of the invalidity of the underlying Sonoma County convictions."  Mot. at 10.  But he cites to no

authority holding that.[2]

The government notes that in United States v. Tinoco-Garcia, 829 Fed. Appx. 183, 184–85 (9th Cir. 2020), the Ninth Circuit affirmed the denial of a motion to dismiss a section 1326 indictment where a defendant had raised the issue of vacating his aggravated felony conviction.  See Opp'n at 10 n.4.  In that case, the defendant had argued that "he may have become eligible for relief if he was able to vacate his aggravated felony conviction" pursuant to Padilla v. Kentucky, 559 U.S. 356 (2010),[3] and that the IJ had failed to advise him of that possibility.  See Tinoco-Garcia, 829 Fed. Appx. at 185.  The circuit held that "[a]ssuming without deciding that the IJ had a duty to advise Tinoco-Garcia about his potential Padilla route to vacating his conviction in state court," the IJ had acted appropriately.  Id.  "After Tinoco-Garcia explained the circumstances of his initial plea to the IJ, the IJ recognized that Tinoco-Garcia may have a Padilla claim," and offered to continue the hearing for a couple weeks "if you want to talk to an attorney."  Id.  Had the court decided that an IJ had an obligation to inform a petitioner about the possibility of vacating a state conviction using Padilla, that would significantly strengthen Gaona's position here.  But the court did not so hold.

In addition, in Tinoco-Garcia, the defendant had "explained the circumstances of his initial plea to the IJ," enabling the IJ to "recogniz[e] that Tinoco-Garcia may have had a Padilla claim."  Id.  In this case, Gaona did not explain any circumstances to the IJ that, in this Court's view, would have put the IJ on notice that Gaona might have had a Padilla claim.  See generally Sargent Decl. Ex. 5.  The records from the state court conviction reflect that Gaona was advised of the immigration consequences of his plea.  See, e.g., Sargent Decl. Ex. 1 at 4 (showing Gaona's initials next to "After discussing with my attorney, I understand that if I am not a citizen of the United States, my conviction for the

---

[2] Moreover, it was not until July 2023—eight years after the hearings before the IJ—that Gaona successfully argued, in his motion under California Penal Code § 1473.7, that Moreno was ineffective; even then, Gaona seems to have persuaded the Sonoma County District Attorney's Office, not the court.

[3] In Padilla, the Supreme Court held that a criminal defense attorney has an obligation to advise a defendant when a guilty plea would result in his removal.  559 U.S. at 360.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    offense charged may have the consequence of deportation, exclusion from admission to the

2    United States, or denial of naturalization pursuant to the laws of the United States.").  And

3    Gaona did not first argue that Moreno was ineffective until April 2016.  See United States

4    v. Ruben Gaona-Cornejo, 15-cr-02322-BEN (S.D. Cal) at Dkt. 24 at 1–2.  Even if the

5    Ninth Circuit had held that the IJ in Tinoco-Garcia's case had an obligation to advise

6    Tinoco-Garcia about the potential for a Padilla claim, that would not necessarily mean that

7    the IJ in Gaona's case, with no inkling of ineffective assistance at the state court level,

8    would need to do so.  Presumably the Ninth Circuit would impose practical limits on how

9    much independent research an IJ would be required to undertake.

10        In the absence of some other authority stating that an IJ has an obligation to tell a

11    petitioner that he could try to vacate his state conviction using Padilla, Gaona's waiver of

12    his right to appeal the IJ's order to the BIA appears both considered and intelligent.

13    Accordingly, Gaona has failed to satisfy the first two prongs of section 1326(d).

14        **B.    Fundamental Unfairness**

15        The third prong of the section 1326(d) analysis is that the removal order was

16    fundamentally unfair.  8 U.S.C. § 1326(d)(3).  "To satisfy the third prong . . . the defendant

17    bears the burden of establishing both that the 'deportation proceeding violate[d] [his] due

18    process rights' and that the violation caused prejudice."  Raya-Vaca, 771 F.3d at 1201–02

19    (quoting United States v. Leon-Leon, 35 F.3d 1428, 1431 (9th Cir. 1994)).  To show

20    prejudice, a defendant must demonstrate that he had "plausible" grounds for relief from

21    deportation.  United States v. Pallares-Galan, 359 F.3d 1088, 1103–04 (9th Cir. 2004)

22    (quoting Arrieta, 224 F.3d at 1079).  "[T]o show 'plausible grounds' for relief, an alien

23    must show that, in light of the factors relevant to the form of relief being sought, and based

24    on the 'unique circumstances of [the alien's] own case,' it was plausible (not merely

25    conceivable) that the IJ would have exercised his discretion in the alien's favor."  United

26    States v. Barajas-Alvarado, 655 F.3d 1077, 1089 (9th Cir. 2011) (quoting United States v.

27    Corrales-Beltran, 192 F.3d 1311, 1318 (9th Cir. 1999)).  If deportation was a "foregone

28    conclusion," then a defendant "cannot demonstrate that he had plausible grounds for relief

from deportation." <u>United States v. Garcia-Martinez</u>, 228 F.3d 956, 963 (9th Cir. 2000).

### 1.    Parties' Arguments

Gaona argues that his removal proceeding was fundamentally unfair because "his due process rights were violated and . . . he suffered prejudice as a result."  Mot. at 10–11 (citing <u>United States v. Arias-Ordonez</u>, 597 F.3d 972, 976 (9th Cir. 2010)).  He contends that (1) his due process rights were violated because "he was deported based on a Constitutionally invalid conviction (specifically, a conviction that was invalid due to the Sixth Amendment violation of ineffective assistance of counsel, to wit, misadvising Mr. Gaona of the immigration consequences of his guilty plea)"; and (2) he "was prejudiced as a result of this due process violation as he was deported when he should not have been." <u>Id.</u> at 11 (citing, without discussion, <u>Padilla</u>, 559 U.S. 356; <u>United States v. Bonilla</u>, 637 F.3d 980, 984 (9th Cir. 2011)[4]; and <u>United States v. Camacho-Lopez</u>, 450 F.3d 928, 930 (9th Cir. 2006)[5]).

The government responds that it has found no case in which, following a defendant's removal and reentry, section 1326(d) has been used to collaterally attack the original state court criminal proceeding, as opposed to an immigration proceeding.  Opp'n at 10–11.  The government next asserts that, even if such a thing were possible, "<u>no court has ever found that [Gaona] received ineffective assistance</u> in his underlying proceeding, and Ninth Circuit precedent does not allow the defendant to ask this Court to make such a

---

[4] In <u>Bonilla</u>, the Ninth Circuit vacated a district court's denial of a motion to withdraw a plea, citing <u>Padilla</u>, and holding that "A criminal defendant who faces almost certain deportation is entitled to know more than that it is <u>possible</u> that a guilty plea would lead to removal; he is entitled to know that it is a virtual certainty."  637 F.3d at 984.  The court explained that had the defendant's lawyer advised him of the possible immigration consequences of his plea, "such advice 'could have at least plausibly motivated a reasonable person in [the defendant's] position not to have pled guilty.'" <u>Id.</u> at 986 (quoting <u>United States v. Garcia</u>, 401 F.3d 1008, 1011–12 (9th Cir. 2005)).  This Court has already permitted Gaona to withdraw his plea.

[5] In <u>Camacho-Lopez</u>, the Ninth Circuit reversed the denial of a motion to dismiss the indictment, holding that an IJ erroneously telling a defendant that he was ineligible for withholding of removal satisfied the exhaustion requirement, and deprived him of "meaningful opportunity for judicial review."  450 F.3d at 930.  In addition, the court held that by being removed "when he should not have been," the defendant "clearly suffered prejudice." <u>Id.</u>  Gaona's case does not involve a challenge to an IJ's erroneous advice.

finding of fact or law." Id. at 11 (emphasis added).

The government also notes that Judge Gonzalez Rogers "declined to dismiss a §
1326 indictment pursuant to section 1326(d) on" similar facts. Id. at 12–13 (citing United
States v. Ambriz, 4:17-cr-00055-YGR, 2019 WL 803843 (N.D. Cal. Feb. 21, 2019)).  In
Ambriz, the defendant, charged with illegal re-entry, moved to dismiss the indictment
pursuant to 8 U.S.C. § 1326(d) in light of "his recent successful petition for a writ of
habeas corpus in Contra Costa Superior Court." Id. at *1.  The defendant had cited Padilla
in his habeas petition and argued that his attorney had failed to advise him of the
immigration consequences of his guilty plea. Id. at *2.  The Superior Court judge held that
the defendant had "made a prima facie showing that he . . . is entitled to relief" and the
government "respectfully concede[d] and ask[ed] the court to grant the motion to vacate
the convictions and set aside the guilty plea." Id.  The superior court judge granted the
habeas petition and set aside the 2005 guilty plea. Id.[6]

Judge Gonzalez Rogers "decline[d] to infer from the showing made to the superior
court that defendant unequivocally established ineffective assistance of counsel." Id. at *4.
She held that Padilla, a 2010 case, did not apply retroactively and therefore did not apply
to defendant's 2005 conviction. Id. at *5.[7]  Importantly, she also held that she need not
determine whether the advice of the defendant's counsel was deficient, because
"Defendant's claims that 'had he been advised of [the] dire consequences, he would not
have pleaded guilty to the charges he did' and that he was 'prejudiced' because he was
'deported when he should not have been' are conclusory without showing how he could
have avoided deportation, even with proper advice." Id. at *7.  She explained that the

---

[6] In this sense, Ambriz had much more favorable facts than Gaona, who did not prevail on
his habeas petititon.  See Sargent Decl. Exs. 10, 11.  However, in Ambriz, there was a
declaration from the criminal defense attorney opposing the motion to dismiss, and stating
that he always advised his clients of immigration consequences (and that Mr. Guzman,
counsel for Ambriz, never contacted him). Id. at *3.  That differs from our case, where
Moreno submitted a declaration in connection with Gaona's habeas petition supporting the
contention that he was ineffective.  See Sargent Decl. Ex. 9 Ex. A.
[7] This is another difference from our facts—Gaona's conviction, in 2013, was post-Padilla.

defendant "ha[d] not shown that a conviction following trial[8] would not have subjected him to the same immigration consequences, nor ha[d] he adduced any substantial evidence suggesting the prosecutor might ultimately have agreed to a plea that would have allowed petitioner to avoid adverse immigration consequences." Id. (cleaned up; citing In re Resendiz, 25 Cal. 4th 230, 253–54 (2001)).  Without a showing of prejudice, Judge Gonzalez Rogers held that "defendant cannot establish that his underlying conviction was invalid due to ineffective assistance of counsel and therefore ha[d] not sustained his burden to show that defects in his deportation process violated his due process rights"— accordingly, the removal order was not fundamentally unfair.  Id.[9]

### 1.    Analysis of the Third Prong

This Court in this section will discuss (a) the absence of any finding of ineffective assistance by Gaona's state court counsel, Moreno; (b) the significance of United States v. Gutierrez-Cerventez, 132 F.3d 460 (9th Cir. 1997); (c) two other Northern District of California cases; and (d) the requirement that Gaona demonstrate prejudice.

### a.    Absence of Ineffective Assistance Finding

The government is correct, as an initial matter, that no court has yet found that Gaona received prejudicial ineffective assistance in his 2013 criminal proceedings.  While Gaona has made that argument several times—see United States v. Ruben Gaona-Cornejo, 15-cr-02322-BEN (S.D. Cal) at Dkt. 24 at 1–2 (April 2016 motion to dismiss first illegal reentry case pursuant to section 1326(d), arguing that no one told him it was a "virtual certainty" that he would be removed following plea to aggravated felony); Sargent Decl.

---

[8] The record in Ambriz was "devoid of any evidence of actual innocence or a claim of actual innocence." Id. at *4.  There is no mention of actual innocence in our case either.
[9] Gaona's supplemental memorandum is all about the Ambriz case.  See generally Supp. Memo.  Gaona asserts in that memorandum that, following the court's denial of the motion to dismiss, the parties agreed to a resolution to that case that was below the guideline range.  Id. at 1–2.  Gaona quotes Mr. Guzman as asserting at the plea hearing in that case that "although this court denied [the motion to dismiss], I know the government viewed it as having potentially some merit."  Id. at 3.  Gaona asserts here: "at least some lawyers at the U.S. Attorney's office thought Mr. Ambriz's argument had merit, and could potentially prevail on appeal, and that was a cause of the favorable plea deal Mr. Ambriz received."  Id.  The government's response is that Gaona's interpretation of the Ambriz prosecutor's views is both speculative and irrelevant.  Reply to Supp. Memo. at 1–2.  The Court agrees.

Case 3:21-cr-00199-CRB   Document 125   Filed 06/10/24   Page 16 of 21

Ex. 9 (February 2017 habeas petition in Sonoma County Superior Court, arguing that Moreno was ineffective); Sargent Decl. Ex. 11 (2017 petition for writ of mandate with the California Court of Appeal, arguing ineffective assistance)—there has been no holding agreeing with him. Moreover, the Sonoma County Superior Court, looking at the same evidence that Gaona presented in July 2023, held in 2017 that Gaona had not carried his burden on an ineffective assistance claim. See Sargent Decl. Ex. 10 ("[Gaona] fails to demonstrate prejudice from trial counsel's alleged deficient performance."). In denying his petition for writ of mandate, the California Court of Appeal held the same thing. See Sargent Decl. Ex. 11 ("petitioner still has not demonstrated an entitlement to relief on his ineffective assistance of counsel claim.").

Nor was there a judicial finding of ineffective assistance in connection with Gaona's July 2023 section 1473.7 motion. The Sonoma County deputy district attorney and Gaona "navigated around the 1473.7 issue" with an agreed-upon disposition. See Sargent Decl. Ex. 13. "Ineffective assistance" did not come up at the hearing. See Sargent Decl. Ex. 12. That the deputy district attorney stipulated to let Gaona withdraw the plea is not, despite Gaona's assertion, "as persuasive as a judicial finding (if not more so)." See Reply at 2. As the government argues, "a prosecutor's discretion to charge or dismiss is not the same as a judicial determination," and "[p]rosecutors may exercise prosecutorial discretion for any number of reasons, including economy and resources." See Opp'n at 12. Gaona therefore overstates things when he asserts that "his conviction was set aside/vacated based on the theory that his conviction was legally invalid, because he suffered ineffective assistance of counsel." See Memo. re Cal. Penal Code § 1473.7 at 6.[10]

---

[10] See also Chavez-Dorame v. United States, No. CV-20-531-TUC-JAT, CR-19-633-TUC-JAT, 2021 WL 3631274, at *8 (D. Ariz. 8/17/2021) ("even assuming that the state court did in fact find ineffective assistance of counsel and that this Court cannot independently determine whether the state court was correct, the state court accepting a stipulation of the parties to vacate an almost 20 year old state court conviction seemingly solely for the purpose of impacting Petitioner's federal immigration status and Petitioner's federal conviction falls directly under United States v. Yepez, 704 F.3d 1087, 1091 (9th Cir. 2012) (en banc) ('State courts cannot be given the authority to change a defendant's federal sentence by issuing a ruling that alters history and the underlying facts.').").

United States District Court
Northern District of California

### b.      Gutierrez-Cerventez

The government also appears to be correct that section 1326(d) motions are not intended to attack an underlying conviction—as opposed to the subsequent removal hearing based on the underlying conviction[11]—unless that conviction was obtained in violation of the right to have appointed counsel.  See Opp'n at 13–15.  In Gutierrez-Cerventez, 132 F.3d at 462, the defendant argued that "the district court should have dismissed his indictment because his prior felony convictions were constitutionally defective and therefore cannot form an element of the crime of illegal reentry after deportation following an aggravated felony conviction."  The Ninth Circuit cited Custis v. United States, 511 U.S. 485, 486 (1994), for the proposition that "the Constitution requires only that collateral attacks be allowed against predicate convictions obtained in violation of the right to appointed counsel."  Id.  It then held that "allowing collateral attacks in § 1326(b) proceedings 'would require sentencing courts to rummage through frequently nonexistent or difficult to obtain state court transcripts or records that may date from another era, and may come from any one of the 50 states.'"  Id. (quoting Custis, 511 U.S. at 486).  The court therefore concluded that "the Constitution requires only that collateral attacks in illegal reentry after deportation proceedings be allowed on convictions obtained in violation of the right to counsel."  Id. (emphasis added).  Because the defendant in that case "had counsel during his state court criminal proceedings, he [could not]. . . challenge those convictions."  Id.[12]

---

[11] A classic example of an 8 U.S.C. § 1326(d) case is United States v. Cisneros-Rodriguez, 813 F.3d 748, 751 (9th Cir. 2015), in which the defendant, charged with illegal reentry, "moved in the district court to dismiss the indictment on the ground that her 2010 removal order was fundamentally unfair."  Following the denial of her motion, id. at 751, the defendant successfully argued to the Ninth Circuit that in her removal hearing, the agent told the defendant "that an attorney would not help her and thereby persuaded [her] to waive her right to obtain an attorney," id. at 758, that this was an "invalid waiver of [her] right to counsel, in violation of her due process rights," id., and that the defendant was prejudiced by this violation because, "had [she] applied for a U-visa in 2010, it was plausible that she would have obtained one," id. at 762.  The Ninth Circuit therefore remanded to the district court "with instructions to dismiss [the] indictment and vacate [the] conviction."  Id.  In this case, Gaona's focus is not his removal hearings, but his state court proceedings.  See Mot. at 8 (state court pleas were "Constitutionally deficient.").
[12] See also United States v. Price, 51 F.3d 175 (9th Cir. 1995) ("Custis held that defendants who wish to challenge the validity of prior convictions to be used for sentence

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Lest one think that ineffective assistance of counsel is simply a type of absence of counsel, the Supreme Court held otherwise in Custis, the main case upon which Gutierrez-Cerventez relies.  In Custis, the Court explained: "failure to appoint counsel for an indigent defendant [is] a unique constitutional defect.  None of the constitutional violations alleged by Custis, including the claimed denial of effective assistance of counsel, rises to the level of a jurisdictional defect resulting from the failure to appoint counsel at all."  511 U.S. at 486.  The Supreme Court in fact warned against extending the right at issue beyond the right "to have appointed counsel."  Id.

Gaona's attempt to distinguish Gutierrez-Cerventez is unpersuasive.  He argues that "[t]he Government may be conflating section 1326(b) and its prior conviction element" with "section 1326(d)."  Reply at 5.  Gaona is correct that Gutierrez-Cerventez dealt with section 1326(b): the issue in that case was that the defendant's "prior convictions form an element of § 1326(b)(2)."  Gutierrez-Cerventez, 132 F.3d at 462.  Gaona is also charged with violating 8 U.S.C. §§ 1326(a) and (b)(2).  See Indictment (dkt. 17).  In Gutierrez-Cerventez, the defendant had moved "to dismiss the indictment based on a collateral attack against the guilty pleas from his previous convictions."  132 F.3d at 461.  Gaona also moves to collaterally attack the guilty pleas from his previous convictions.  See Mot. at 8 (state court pleas were "Constitutionally deficient.").  Gaona also asserts that "there is copious case law that post-dates the cases cited by the Government that addresses myriad defects other than deprivation of the appointment of counsel."  See Reply at 4–5 (citing United States v. Alvarez, 60 F.4th 554 (9th Cir. 2023); United States v. Comacho-Lopez, 450 F.3d 928 (9th Cir. 2006); United States v. Alvarado-Pineda, 774 F.3d 1198 (9th Cir. 2014)).  In all three of those cases, the defendant argued that his underlying conviction was not an aggravated felony.  See Alvarez, 60 F.4th at 557; Camacho-Lopez, 450 F.3d at 930; Alvarado-Pineda, 774 F.3d at 1201.  That is not the argument Gaona is making here.

---

enhancement have the constitutional right to do so only through habeas corpus; the sole constitutionally-mandated exception to this general rule is an allegedly total denial of the right to counsel in the prior proceeding."); see also United States v. Sadler, 77 F.4th 1237, 1242 (9th Cir. 2023) (discussing Price, Custis in the context of sentencing).

1    Gaona does not argue that the IJ misconstrued the legal significance of Gaona's

2    convictions, but that his state court counsel misadvised him about the legal significance of

3    his plea.  The argument Gaona makes here would require this Court to make a

4    determination about what state court counsel did, not about what the IJ did.  And again, the

5    IJ had no basis to conclude that Moreno was ineffective.

### c.    **Villavicencio** and **Parada-Banos**

7         Two more cases from this district merit a quick mention.  In United States v.

8    Villavicencio, No. 09-cr-0526 SBA, 2012 WL 566370, at *3 (N.D. Cal. Feb. 21, 2012)),

9    where a defendant argued that "his 2020 state court conviction is invalid due to ineffective

10   assistance of counsel under Padilla which, in turn, invalidates the 2003 removal order

11   which forms the basis of the instant charges," Judge Armstrong held that "the law is clear

12   that a defendant may not collaterally attack a prior felony conviction based on a claim of

13   ineffective assistance of counsel."  2012 WL 566370, at *3 (citing Custis).  She held:

14   "Because Defendant's motion to dismiss is tantamount to an impermissible collateral

15   attack on his prior conviction, dismissal of the Indictment is not warranted."  Id.

16        In United States v. Parada-Banos, No. CR-12-0635 EMC, 2013 WL 3187404, at *6

17   (N.D. Cal. June 21, 2013), the government had cited to Gutierrez-Cerventez for the

18   proposition that "regardless of whether ineffective assistance of counsel constitutes a due

19   process violation, it may not serve as grounds for a § 1326(d) collateral attack."  Judge

20   Chen responded that "even though a party may not collaterally attack an underlying

21   criminal proceeding under § 1326(d), he or she may collaterally attack the resulting

22   removal proceeding on the basis of ineffective assistance of counsel."  Id. (emphasis

23   added).  In that case, where the defendant argued that his immigration counsel was

24   ineffective because he never informed the defendant about the possibility of relief under

25   the Convention Against Torture, neither Gutierrez-Cervantez nor Custis barred the

26   argument.  Id.[13]

27   _____

28   [13] Even so, Judge Chen found that the defendant had not demonstrated prejudice because
     he did not show that he had a plausible CAT deferral claim.  Id. at *7.

United States District Court
Northern District of California

1   Here, unlike in <u>Parada-Banos</u>, but just like in <u>Villavicencio</u>, Gaona is arguing that

2   he received ineffective assistance in his state criminal proceedings.  <u>See</u> Mot. at 8 ("By not

3   doing [the necessary] research, or properly advising Mr. Gaona on the consequences of

4   that guilty plea, prior counsel failed to provide effective assistance of counsel.").  The only

5   argument that Gaona could theoretically make for why his <u>immigration counsel</u> was

6   ineffective[14] is that immigration counsel failed to advise Gaona that he should try to vacate

7   his criminal convictions because his state criminal counsel was ineffective.  That is not

8   Gaona's argument.  More importantly, without a finding that Moreno was ineffective—a

9   finding that <u>Gutierrez-Cerventez</u> prevents this Court from making and that no other court

10  has yet made—this Court cannot conclude that immigration counsel was ineffective.

### d.      Prejudice

12  Another problem is that Gaona also has to demonstrate prejudice.  <u>See</u> <u>United States</u>

13  <u>v. Reyes-Bonilla</u>, 671 F.3d 1036, 1049 (9th Cir. 2012).  As in <u>Ambriz</u>, he would need to

14  show "how he could have avoided deportation, even with proper advice."  <u>See</u> 2019 WL

15  803843, at *7.  The Superior Court has already examined this issue and did not think that

16  he could do so.  <u>See</u> Sargent Decl. Ex. 10 at 2 ("[Gaona] fails to demonstrate prejudice

17  from trial counsel's alleged deficient performance. . . . There's no evidence that the People

18  would've agreed to any alternative plea disposition.").  The Court of Appeal did not either.

19  <u>See</u> Sargent Decl. Ex. 11 ("petitioner still has not demonstrated an entitlement to relief on

20  his ineffective assistance of counsel claim.").

21  Gaona's cursory argument in support of prejudice—that he was removed when he

22  should not have been, <u>see</u> Mot. at 11—is insufficient.  <u>See</u> <u>Ambriz</u>, 2019 WL 803843, at

23  *7.  And he skips over the issue of prejudice altogether in his reply brief, arguing

24  essentially that the Court has all of the information it needs to determine that Moreno was

United States District Court
Northern District of California

---

[14] Notably, Gaona did not have counsel for most of his immigration proceedings, despite the IJ's recommendation that he get counsel.  <u>See, e.g.</u>, Sargent Decl. Ex. 5 at Day 2 1:13 ("it's going to be a lot better for you if you have an attorney to help explain what the options are.").

1  ineffective.  <u>See</u> Reply at 2.  Gaona fails to demonstrate that he had "plausible" grounds

2  for relief from deportation.  <u>See</u> <u>Pallares-Galan</u>, 359 F.3d at 1103–04.

3       Accordingly, Gaona has failed to satisfy the third prong of section 1326(d).

4  **IV.   CONCLUSION**

5       For the foregoing reasons, the Court DENIES the motion to dismiss.  The

6  government asks that denial be with prejudice, as the case was indicted in 2021, while

7  Gaona responds that a local rule already "prevents motions for reconsideration absent

8  changes in law or a significant change in circumstances."  <u>See</u> Opp'n at 15; Reply at 5–6.

9  The Court does not deny the motion with prejudice.

10      **IT IS SO ORDERED.**

11      Dated: June  10 , 2024



CHARLES R. BREYER
United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California